UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| In re: | Chapter 11 |
|---|---|
| ORION HEALTHCORP, INC. | Case No. 18-71748 (AST) |
| CONSTELLATION HEALTHCARE TECHNOLGIES, INC. | Case No. 18-71749 (AST) |
| NEMS ACQUISITION, LLC | Case No. 18-71750 (AST) |
| NORTHEAST MEDICAL SOLUTIONS, LLC | Case No. 18-71751 (AST) |
| NEMS WEST VIRGINIA, LLC | Case No. 18-71752 (AST) |
| PHYSICIANS PRACTICE PLUS, LLC | Case No. 18-71753 (AST) |
| PHYSICIANS PRACTICE PLUS HOLDINGS, LLC | Case No. 18-71754 (AST) |
| MEDICAL BILLING SERVICES, INC. | Case No. 18-71755 (AST) |
| RAND MEDICAL BILLING, INC. | Case No. 18-71756 (AST) |
| RMI PHYSICIAN SERVICES CORPORATION | Case No. 18-71757 (AST) |
| WESTERN SKIES PRACTICE MANAGEMENT, INC. | Case No. 18-71758 (AST) |
| INTEGRATED PHYSICIAN SOLUTIONS, INC. | Case No. 18-71759 (AST) |
| NYNM ACQUISITION, LLC | Case No. 18-71760 (AST) |
| NORTHSTAR FHA, LLC | Case No. 18-71761 (AST) |
| NORTHSTAR FIRST HEALTH, LLC | Case No. 18-71762 (AST) |
| VACHETTE BUSINESS SERVICES, LTD. | Case No. 18-71763 (AST) |
| MDRX MEDICAL BILLING, LLC | Case No. 18-71764 (AST) |
| VEGA MEDICAL PROFESSIONALS, LLC | Case No. 18-71765 (AST) |
| ALLEGIANCE CONSULTING ASSOCIATES, LLC | Case No. 18-71766 (AST) |
| ALLEGIANCE BILLING & CONSULTING, LLC | Case No. 18-71767 (AST) |
| PHOENIX HEALTH, LLC | Case No. 18-71789 (AST) |
| Debtors. | (Joint Administration) |
| CONSTELLATION HEALTHCARE TECHNOLOGIES, INC. AND NEW YORK NETWORK MANAGEMENT, L.L.C., | |
| Plaintiffs, | Adv. Pro. No. 18-08155 |
| v. | |
| KEVIN KELLY AND EDEL KELLY | |
| Defendants. | |

**CROSS-MOTION FOR SUMMARY JUDGMENT**

**MUCHMORE & ASSOCIATES PLLC**
217 Havemeyer Street, 4th Floor
Brooklyn, New York 11211
(917) 932-02999

**TABLE OF CONTENTS**

**PRELIMINARY STATEMENT……………………………………………………1**

**ARGUMENT………………………………………………………….……….3**

**I. The Kellys' Claims Should not be Subordinated Under FRBP 510(b)…...3**

**A. The Sale of NYNM Converted the Kellys' Equity Into Debt……...3**

**B. Policy Considerations Support Denying Subordination……..…....4**

**II. The Kellys' Claims Should Not be Subordinated to the Claim of Bank of American……………………………………5**

**A. Principles of Equitable Subordination Support Subordinating Claims by Bank of America to the Kellys in the NYNM Estate…..6**

**B. Bank of America engaged in Inequitable Conduct Concerning the Rights of the Kellys……………………………………………...6**

**C. Bank of America's Conduct Conferred an Unfair Advantage Resulting in Injury to the Kellys………………...………..……...8**

**III. Debtor's Attempt to Subordinate the Kellys' Claims Would Improperly Result in De Facto Substantive Consolidation………..……...8**

**A. The NYNM Bankrptcy Estate is Distinct from the Other Debtors Being Jointly Administered……………………..………8**

**B. The Kellys' Claims can only be Subordinated to the Creditors of NYNM, not the Creditors of NYNM's Parents…………………10**

**CONCLUSION……………………………………………………….……..10**

# TABLE OF AUTHORITIES

Statutes

11 U.S.C. § 510(b)……………………………………………………………………………1

Case Law

*Adelphia Recovery Trust v. Bank of America, N.A.,*
390 B.R. 80, affirmed 379 Fed.Appx. 10, 2010 WL 2094028, (S.D.N.Y.2008), cert. dismissed 562 U.S. 1126……………………………………………….………………………9

*Citicorp Venture Capital, Ltd. v. Committee of Creditors Holding Unsecured Claims*,
160 F.3d 982, 986-87 (3d Cir. 1998)……………………………………...………..6

*The Consolidated FGH Liquidating Trust v. Marler,*
2007 WL 2955952 (S.D. Miss. 2007)……………………………………….………5

*In re Ahlswede,*
516 F.2d 784 (9th Cir., 1975), cert. denied 423 U.S. 913…………………………….…6

*In re American Wagering, Inc.,*
493 F.3d 1067, 1071, (9th Cir. 2007)……………………………………...…………4

*In re Baker & Getty Financial Services, Inc.,*
974 F.2d 712, 717, (6th Cir. 1992)…………………………………………...……..6

*In re Interstate Cigar Co., Inc.,*
182 B.R. 675, (Bankr. E.D.N.Y. 1995) subsequently affirmed 166 F.3d 1200……..…...7

*In re Marketxt Holdings Corp.,*
361 B.R. 369, 388-89 (Bankr. S.D. N.Y. 2007)……………………………………..4

*In re Med Diversified, Inc.*,
461 F.3d 251, 253, (2d Cir. 2006)…………………………………………………...3

*In re Washington Mut., Inc.*,
461 B.R. 200 (Bankr. D. Del. 2011)……………………………………………...6

*Matter of Lemco Gypsum, Inc.,*
911 F.2d 1553, 1557, (11th Cir. 1990)………………………………………...……6

*Matter of Mobile Steel Co.*,
563 F.2d 692, 700, 15 C.B.C. 1 (5th Cir. 1977)……………………………………..6

**PRELIMINARY STATEMENT**

In the instant adversary proceeding and Motion for Summary Judgment, Constellation Healthcare Technologies, Inc. ("Constellation") and New York Network Management, L.L.C. ("NYNM") seek equitable subordination of the claims of Kevin Kelly ("Kevin") and Edel Kelly ("Edel")("the Kellys") pursuant to Bankruptcy Code Sec. 510(b). In the instant Cross-Motion for Summary Judgment, Kevin and Edel seek equitable subordination of the claims Bank of America, N.A. ("B of A"), Elizabeth Kelly, and other creditors of Constellation and the initial Debtors ("the Initial Debtors") pursuant to Bankruptcy Code Sec. 510(c).

Kevin and Edel's claims initially arose from the sale of NYNM to Constellation for approximately $32 million. Upon learning of Constellation's offer, its Managing Member demanded that all minority members relinquish their shares for a fraction of their value. Kevin and Edel commenced an action in the Supreme Court of New York [Exhibit "B"] seeking to enjoin the sale unless a portion of the proceeds were held in escrow to protect them. Pursuant to an Interim Order dated January 3, 2017 [Exhibit "G"], the sale was allowed to proceed "upon the condition that five (5%) percent of the net proceeds of the net proceeds received at the closing are held in escrow". Shortly thereafter, Edel was added as a Plaintiff and filed a motion to have an equal portion of the proceeds held in escrow for her benefit, which was granted [Exhibit "H"]. While that motion was pending and without notifying the Court, Constellation and NYNM proceeded with the sale without complying with the escrow requirement. Bank of America, N.A. lent funds to Constellation for the sale, and though the Membership Interest Purchase Agreement [Exhibit "C"] referenced the action and escrow requirement, it was not complied with. As a result, NYNM was held in contempt [Exhibit "I"]. Rather than purge that contempt, and despite being solvent and not needing bankruptcy protection, NYNM filed its voluntary petition herein.

The claims of Kevin and Edel herein are based on NYNM and Constellation's violation of those Orders and the breach of their fiduciary duties to Kevin and Edel as trust beneficiaries. In relation to the sale, Kevin and Edel did not bargain for an uncertain ownership interest, but instead agreed to allow the sale to proceed on condition that a specific amount of funds were held in escrow for their benefit. The claims are rooted in breach of trust and conversion, though the original state court claims were based on NYNM's violation of their rights as members.

NYNM's voluntary petition references creditor claims which are negligible in relation to its assets. However, the Initial Debtors maintain that immediately after the sale was concluded and without honoring the escrow requirements, NYNM pledged all its assets as collateral to B of A in relation to the loan it made to Constellation [Exhibit "A"]. B of A could not rely on any such purported pledge of collateral, as it had already lent the funds to Constellation, with full knowledge of the Kevin and Edel's claims and without ensuring compliance with the escrow requirements.

The Debtors' motion, adversary complaint, and proposed Chapter 11 plan all attempt to conflate the assets and bankruptcy estate of NYNM with the assets and bankruptcy estates of the Initial Debtors. This is impermissible since the estates have not been substantively consolidated. Even if this Court were to hold that Kevin and Edel's claims should be equitably subordinated to other creditors *of NYNM*, it could not subordinate Kevin and Edel's claims to creditors of Constellation and the other Initial Debtors, including B of A and Elizabeth Kelly. Constellation, B of A, and Elizabeth Kelly were on notice of Kevin and Edel's claims at the time of the sale, yet failed to comply with escrow conditions authorizing it. As a result, any interest they took in NYNM was subject to the claims of Kevin and Edel and must be equitably subordinated.

## ARGUMENT

### I. The Kellys' Claims Should Not Be Subordinated Under 510(b).

#### A. The Sale of NYNM converted the Kellys' equity into debt.

NYNM and the other debtors have maintained that 100% of NYNM was sold to NYNM Acquisition LLC [Third Amended Disclosure Statement, Index 8-18-71748-ast, Doc. 644, p. 21]. If this is true, then NYNM is obligated to pay the Kellys' for their shares in the manner of an unsecured creditor, i.e. the Kellys' are owed contractual performance from NYNM, By not paying the Kelly's for their shares, NYNM breached the contract causing damages. Breach of contract damages are unsecured claims, not equity interests. Therefore, before the voluntary petition, the Kellys' claims ceased to be equity ownership, and should not be subordinated as an equity security interest under Section 510(b).

This reasoning is consistent with that of *In re Med Diversified, Inc.*, 461 F.3d 251, 253, (2d Cir. 2006). In *Med Diversified* the Second Circuit recognized two underlying rationales for subordination under section 510(b): the claimant "(1) took on the risk and return expectations of a shareholder, rather than a creditor, or (2) seeks to recover a contribution to the equity pool presumably relied upon by creditors in deciding whether to extend credit to the debtor." *Id* at 256. In this case, the Kellys did not bargain for equity rather than cash, as they were not part of the bargain in the sale at all. [Aff. of Kevin Kelly, p. 2] Furthermore, no equity pool was relied upon by creditors in deciding whether to extend credit to NYNM—NYNM did not even receive any of the proceeds of the Bank of America prepetition financing. Therefore, under the reasoning of *Med Diversified*, the Court should refrain from subordinating the Kellys' claims.

**B. Policy considerations support denying subordination.**

Section 510(b) "serves to effectuate one of the general principles of corporate and bankruptcy law: that creditors are entitled to be paid ahead of shareholders in the distribution of corporate assets." *In re American Wagering, Inc.*, 493 F.3d 1067, 1071, (9th Cir. 2007). Shareholders, in the first instance, should bear the risk of loss of the corporation's assets—even if they were not responsible for causing the loss. *Id.* Section 510(b) thus seeks to prevent those shareholders, who might claim that they were defrauded by the debtor into buying their equity interests, from asserting such a claim and from recovering on par with general unsecured creditors. *Id.* These policy considerations behind Section 510(b) are not present in the case of the Kellys. Here, the Kellys' did not bear the risk of loss of NYNM's assets, because their shares were sold before the voluntary petition, and the Kellys were not part of any bargaining process wherein they agreed to have their shares sold [Aff. of Kevin Kelly, p. 2] Moreover, NYNM never suffered a loss of assets in the first place, and the company was solvent and a going concern as of the date of the petition. [*New York Network Management, L.L.C. Chapter 11 Voluntary Petition,* Index 8-18-74545-ast, Doc. 1]

A creditor's claim should not be subordinated under section 510(b) simply because at some prior point in time the debt had its genesis in an LLC interest. *In re Marketxt Holdings Corp.,* 361 B.R. 369, 388-89 (Bankr. S.D. N.Y. 2007). While the Kellys' claims had their genesis as LLC interests, they should now be regarded as debts. The Kellys' state court lawsuit against NYNM—now removed—makes clear that NYNM owes them a certain amount of money in exchange for the sale of shares that were subject to a completed transaction.[Exhibit "B", Kevin Kelly Summons, Complaint, Amended Complaint.] The debt arose not only from the Kellys' LLC interests, but from the conditions of the Order of the Supreme Court of New York, Kings County authorizing the sale, which required a portion of the sales proceeds to be held in trust for

the benefit of the Kellys. The Debtors, with funding and cooperating from Bank of America, N.A. ("B of A"), completed the sale without fulfilling those conditions. Both parties were aware of the Kellys' pending action, which was referenced in the Membership Interest Purchase Agreement governing the sale [Exhibit "C", Membership Interest Purchase Agreement, Doc. 426]. Neither can be consider a bona fide purchaser or lender with interests superior to the Kellys' rights as trust beneficiaries. It would pervert the purpose of Section 510(b) to reward B of A and the Debtors with a free and clear interest in NYNM as a result of their violation of these trust conditions.

The policy behind 510(b) does not favor subordinating the Kellys' claims here. As of the NYNM petition date, 100% of NYNM was sold to the Debtors, so the Kellys "no longer enjoyed the primary benefit of ownership: the potential for unlimited profits." *See The Consolidated FGH Liquidating Trust v. Marler,* 2007 WL 2955952 (S.D. Miss. 2007). The sale was only permitted to proceed pursuant to trust conditions established by the Court, requiring a fixed percentage of the proceeds to be held in escrow for the Kellys' benefit. Therefore, the policy considerations behind Section 510(b) support treating the Kelly's claim as a creditor interest, and not subordinating it categorically under 510(b).

## II. The Kellys' Claims Should Not Be Subordinated to the Claim of Bank of America.

The subordination of the Kellys' claims to those of Bank of America's prepetition financing claims would result in the Kellys being paid nothing for the sale of their shares, and with them not retaining any equitable rights in the NYNM estate. The Kellys have already submitted a Motion seeking to revise the postpetition financing order to ensure that Bank of America's claims do not attach to the NYNM estate. The Kellys submit that the facts set forth in that pleading and exhibits support a denial of the instant Motion for Summary Judgment on

subordination. B of A was aware of the Kellys' claims at the time it funded the purchase of NYNM, failed to take adequate measures to ensure the trust conditions of the sale were complied with, and did not provide any funding to NYNM or for NYNM's benefit. As set forth below, even if B of A's claim were to attach to the NYNM estate, any such claim should be subordinated to that of the Kellys, pursuant to 510(c).

**A. Principles of equitable subordination support subordinating claims of B of A, Elizabeth Kelly, and other creditors of the Initial Debtors to the Kellys.**

Section 510(c) authorizes courts to employ "principles of equitable subordination." Equitable subordination permits a bankruptcy court to determine that the claim of one creditor should be subordinated in right of payment to that of another creditor or of a group of other creditors, even though it otherwise would be of the same or even higher priority. *See In re Washington Mut., Inc.*, 461 B.R. 200 (Bankr. D. Del. 2011). When a claimant has engaged in inequitable conduct, resulting in injury to the debtor's creditors or conferred unfair advantage to a claimant, court have generally permitted equitable subordination under Section 510(c). *Matter of Mobile Steel Co*., 563 F.2d 692, 700, 15 C.B.C. 1 (5th Cir. 1977). *See also In re Baker & Getty Financial Services, Inc.,* 974 F.2d 712, 717, (6th Cir. 1992); *Matter of Lemco Gypsum, Inc.,* 911 F.2d 1553, 1557, (11th Cir. 1990); *Citicorp Venture Capital, Ltd. v. Committee of Creditors Holding Unsecured Claims*, 160 F.3d 982, 986-87 (3d Cir. 1998). Here, Elizabeth Kelly, Constellation, and B of A proceeded with the sale of NYNM to Constellation without complying with court-ordered escrow requirements. As a result, their claims should be subordinated to the claims of the Kellys.

**B. B of A engaged in inequitable conduct concerning the rights of the Kellys.**

Any breach of the multitude of rules of fair play and good conscience traditionally enforced by a court of equity will suffice to find inequitable conduct for purposes of equitable subordination. *In re Ahlswede*, 1975, 516 F.2d 784 (9th Cir., 1975), cert. denied 423 U.S. 913. Bank of America has attempted to use the stipulation between them and the Debtors to have $160 million in debt that NYNM did not borrow, and which never had any possibility of inuring to the benefit of the Kellys, attach to NYNM's assets. [*Bank of America's Objection to Kevin Kelly and Edel Kelly's Motion for Modification or Clarification of Final Order Authorizaing Debtors to Obtain Postpetition Financing*, Doc. 552] To this extent, Bank of America and the other Debtors attempt to use the NYNM estate as a mere instrumentality. *See In re Interstate Cigar Co., Inc.,* Bkrtcy. E.D.N.Y.1995, 182 B.R. 675, subsequently affirmed 166 F.3d 1200 ("Inequitable conduct," such as may warrant equitable subordination of creditor's claim, may include fraud, illegality, breach of fiduciary duties, under-capitalization, or claimant's use of debtor as mere instrumentality or alter ego.). The pledge of the NYNM's assets to Bank of America purportedly occurred on on the day the sale of NYNM was completed, when Kevin and Edel Kelly remained unpaid and without the protection of the escrow the Court had mandated. Not only was the original escrow severely underfunded, but it was subsequently raided by Elizabeth Kelly without authorization of the Court pursuant to an Amended and Restated Escrow Agreement between her and Holland & Knight LLP. [Exhibit "D", Amended and Restated Escrow Agreement] The original escrow agreement has not been produced, but wire records [Exhibit "E", Escrow Payment Wire Instructions] indicate that the escrow account was originally funded with $820,500 and reduced to $445,315 pursuant to the Amended and Restated Escrow Agreement. This could have been easily avoided by the Debtors and B of A at the time the sale was funded

by establishing the escrow account pursuant to an agreement that would prohibit withdrawals without the Court's authorization.

While recognizing a pledge of substantially all of NYNM's assets to B of A without consideration might benefit B of A and the estates of Initial Debtors the Initial Debtors, it would only injure the NYNM estate and effectively wipe out any claims thereto other than B of A's prepetition financing claim. This would allow B of A to be repaid from the proceeds of the NYNM sale without paying the Kellys anything for the sale of their interests in NYNM. NYNM did not need, apply for, or receive any post-petition financing. The Financing Order was issued solely in relation debt and assets of the non-NYNM debtors. Therefore, Bank of America's conduct in seeking to attach the assets of NYNM treats NYNM as a mere instrumentality, and supports a finding of inequitable conduct.

**C. Bank of America's conduct conferred an unfair advantage resulting in injury to the Kellys.**

Because the Kellys were never paid for the sale of the shares in NYNM upon which B of A seeks to attach its lien and its prepetition financing priority, subordinating the Kellys' claims to Bank of America in this regard would confer an unfair advantage on B of A, and work manifest injury to the Kellys. The Kellys would be irreparably injured, because subordination would ensure that they would never receive any money for the transfer of their interests in NYNM, nor would they receive any benefits from retaining ownership of NYNM shares. Therefore, such an outcome should be avoided, and the Kellys' claims should not be subordinated to B of A as it concerns the NYNM estate. B of A extended funding solely to the Initial Debtors and its recovery should be limited to their estates. B of A's claim is derivative of the Initial Debtors' equity interest in NYNM. As a result, while it may attach to the Initial Debtors' membership interest in NYNM, it cannot take priority over NYNM's creditors.

**III. Debtor's Attempt to Subordinate the Kellys' Claims Would Improperly Result in De Facto Substantive Consolidation.**

**A. The NYNM bankruptcy estate is distinct from that the other debtors being jointly administered.**

From the outset, the Debtor attempts to characterize NYNM as being "consolidated" with the other debtors subject to the order of joint administration herein. See, e.g., Adversary Complaint at ¶6. The Debtor's objection to the Kellys' claim and this Motion for Summary Judgment is an attempt to not only subordinate the Kellys' claims to those of NYNM's other claim holders, but to subordinate the Kellys' claims to those of creditors of different estates. Such an outcome would amount to a de facto substantive consolidation. However, the NYNM bankruptcy is being jointly administered with the Initial Debtors for procedural purposes only, and it has not been, and should not be, substantively consolidated with the other debtors. [Exhibit "F", *Order Granting Motion for Joint Administration on Lead Case,* Doc. 381.]

Significant issues unique to NYNM warrant treating the NYNM estate differently than the estates of the Initial Debtors. The acquisition of NYNM remained in doubt on the date of NYNM's voluntary petition, because of the purchaser's failure to pay the Kellys the purchase price for their shares, which was the subject of ongoing state court litigation on the petition date. This state court litigation resulted in orders that certain funds be held in trust for the benefit of the Kellys, and this litigation calls into question the Kellys' status with relation to NYNM. [Exhibit "G" and "H" Supreme Court of New York Orders dated January 3, 2017 and October 20, 2017.]

While NYNM was a profitable and solvent going concern at the time it filed its Voluntary Petition, the NYNM estate now consists only of the cash available from the completed sale of all of its assets, presently held in trust with NYNM's counsel. The NYNM Voluntary Petition came significantly later than the other Debtors. The other Debtors now seek to use the proceeds of the

NYNM sale to fund the reorganization of the non-NYNM debtors, to the direct detriment of all the claim holders to the NYNM estate. The use of a joint administration order for such purposes is inappropriate, and should be rejected as an attempt to effect substantive consolidation *sub rosa.*

**B. The Kellys' claims can only be subordinated to the creditors of NYNM, not the creditors of NYNM's parents.**

Without an order of substantive consolidation, the claims against separate estates of subsidiary debtors cannot be equitably subordinated to claims of creditors of parent debtors in a jointly administered case. *Adelphia Recovery Trust v. Bank of America, N.A.*, 390 B.R. 80, affirmed 379 Fed.Appx. 10, 2010 WL 2094028, (S.D.N.Y.2008), cert. dismissed 562 U.S. 1126. The Motion for Joint Administration [ECF Doc. 2] makes clear "[e]ach creditor and other party in interest will maintain whatever rights it has against the particular estate in which it allegedly has a claim or right." Therefore, NYNM must be treated as a separate entity, and recognized as having its own creditors, assets, and liabilities. In the event the Kellys' claims are subject to subordination under 510(b), they may only be subordinated to senior claims on the NYNM estate.

**<u>CONCLUSION</u>**

Since Kevin and Edel's claims are rooted in breach of trust and conversion, they should not be equitably subordinated pursuant to Bankruptcy Code Sec. 510(b). Even if their claims could be equitably subordinated to other creditors *of NYNM*, they could not be equitably subordinated to creditors of Constellation and the other Initial Debtors, including B of A and Elizabeth Kelly. Constellation, Elizabeth Kelly, and B of A elected to proceed with the purchase of a contested membership interest in NYNM with full knowledge of Kevin and Edel's claims and without complying with the court-mandated escrow requirements. As a result, any claims of

B of A, Constellation, or other creditors of the Initial Debtors to NYNM's assets should be equitably subordinated to Kevin and Edel's claims pursuant to Bankruptcy Code Sec. 510(c).

Dated: Brooklyn, New York
January 18, 2019

**MUCHMORE & ASSOCIATES PLLC**
Attorneys for Kevin and Edel Kelly

By: /s/ Andrew Muchmore
Andrew Muchmore, Esq.
217 Havemeyer Street, 4th Floor
Brooklyn, New York 11211
(917) 932-0299