UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11 |
| ORION HEALTHCORP, INC. | Case No. 18-71748 (AST) |
| CONSTELLATION HEALTHCARE TECHNOLGIES, INC. | Case No. 18-71749 (AST) |
| NEMS ACQUISITION, LLC | Case No. 18-71750 (AST) |
| NORTHEAST MEDICAL SOLUTIONS, LLC | Case No. 18-71751 (AST) |
| NEMS WEST VIRGINIA, LLC | Case No. 18-71752 (AST) |
| PHYSICIANS PRACTICE PLUS, LLC | Case No. 18-71753 (AST) |
| PHYSICIANS PRACTICE PLUS HOLDINGS, LLC | Case No. 18-71754 (AST) |
| MEDICAL BILLING SERVICES, INC. | Case No. 18-71755 (AST) |
| RAND MEDICAL BILLING, INC. | Case No. 18-71756 (AST) |
| RMI PHYSICIAN SERVICES CORPORATION | Case No. 18-71757 (AST) |
| WESTERN SKIES PRACTICE MANAGEMENT, INC. | Case No. 18-71758 (AST) |
| INTEGRATED PHYSICIAN SOLUTIONS, INC. | Case No. 18-71759 (AST) |
| NYNM ACQUISITION, LLC | Case No. 18-71760 (AST) |
| NORTHSTAR FHA, LLC | Case No. 18-71761 (AST) |
| NORTHSTAR FIRST HEALTH, LLC | Case No. 18-71762 (AST) |
| VACHETTE BUSINESS SERVICES, LTD. | Case No. 18-71763 (AST) |
| MDRX MEDICAL BILLING, LLC | Case No. 18-71764 (AST) |
| VEGA MEDICAL PROFESSIONALS, LLC | Case No. 18-71765 (AST) |
| ALLEGIANCE CONSULTING ASSOCIATES, LLC | Case No. 18-71766 (AST) |
| ALLEGIANCE BILLING & CONSULTING, LLC | Case No. 18-71767 (AST) |
| PHOENIX HEALTH, LLC | Case No. 18-71789 (AST) |
| Debtors. | (Joint Administration) |

-------------------------------------------------------------------------x
CONSTELLATION HEALTHCARE TECHNOLOGIES, INC.
AND NEW YORK NETWORK MANAGEMENT, L.L.C.,

        Plaintiffs,                                Adv. Pro. No. 18-08155

      v.

KEVIN KELLY AND EDEL KELLY

        Defendants.
-------------------------------------------------------------------------x

## DECLARATION OF KEVIN KELLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT

I, Kevin Kelly, declare under penalty of perjury that the following is true and correct:

1.    I am a named Defendant in this adversary proceeding. As such, I am personally familiar with the facts set forth herein.

2.  Upon information and belief, the sale of New York Network Management, L.L.C. ("NYNM") to Constellation Healthcare Technologies, Inc. ("Constellation") was completed on or about March 10, 2017.

3.  As of the date of the sale, I owned a 3% interest in NYNM, as further described in the pleadings filed in the Supreme Court of the State of New York, Kings County, in *Kevin Kelly and Edel Kelly v. New York Network Management L.L.C. and Elizabeth Kelly,* Index No. 522255/2016 [Exhibit "B", Kevin Kelly Complaint].

4.  Prior to the sale, I had worked full-time at NYNM for close to a decade. The value of my 3% membership interest based on a sale price of $32 million was $960,000. In addition, NYNM had failed to issue declared distributions to me and Edel of approximately $250,000 each in the six years preceding the sale.

5.  When Elizabeth Kelly ("Elizabeth"), my mother and the Managing Member of NYNM, received the purchase offer of $32 million, she immediately demanded the I and my sister, Defendant Edel Kelly ("Edel"), surrender our 3% interests for $250,000 and stated that we would get nothing if we refused to accede to this demand.

6.  When I refused, Elizabeth purported to terminate my membership interest, though I maintain that this purported termination was invalid because Elizabeth was not acting in good faith and was simply trying to unjustly enrich herself.

7.  Upon information and belief, Elizabeth never purported to terminate Edel's membership interest, but told Edel she would not be given the value of her membership interest under the sale since she refused to accept the $250,000.

8.  As a result of the foregoing, I commenced the above-referenced lawsuit to recover the value of my share and unpaid distributions. Shortly after my filing of the lawsuit, Edel was added as a

plaintiff. NYNM commenced its own lawsuit against me on the same day seeking to prohibit me from interfering in the sale.

9. As set forth in the attached Orders, NYNM and I agreed that the sale could proceed if 5% of the net proceeds of the sale were held in escrow for my benefit. Once Edel was added as a plaintiff, the Court ordered that this amount be increased to 10%.

10. Upon information and belief, the sale was completed by NYNM and Constellation did not comply with the requirement that they hold these amounts in trust. As a result, NYNM and Elizbeth were held in contempt of Court.

11. While my claim in the above-referenced lawsuit was based my membership interest in NYNM, my claim in this bankrupty proceeding is based upon NYNM's violation of its trust obligations. NYNM and I agreed that a specific percentage of the sales proceeds would be held in escrow for my benefit as a condition to allowing the sale to proceed. I would not have agreed to allow the sale to proceed if NYNM had not entered into this agreement and it had not been incorporated as an Order of the Court.

12. I never took on any risk of return expectations in relation to the agreement to allow the sale to proceed. All such risk was supposed to have been eliminated by the agreement and Orders requiring that my share of the sales proceeds and Edel's share would be held in escrow until the litigation was concluded.

13. For all practical purposes, NYNM, Elizabeth, and Constellation essentially stole my share of the sales proceeds. Upon information and belief, Bank of America, N.A. was complicit in this because it was aware of the pending lawsuit and escrow requirements, and failed to take any steps to ensure that they were complied with.

14. To the best of my knowledge, Bank of America, N.A. never lent any funds to NYNM. At the time of the sale, NYNM was earning a profit of approximately $5 million a year according to its K1's and had no need for financing.

15. To the extent Bank of America, N.A. claims that NYNM pledged essentially all of its assets as collateral on the day of the sale, any such pledge would have been in connection with funds lent to the purchaser to fund the purchase, and would not have benefited NYNM. Bank of America, N.A. was aware of the claims of me and Edel, which were referenced in the purchase agreement, and could not have relied in good faith on the purchaser purported to pledge all of NYNM's assets for the purchaser's own benefit without paying me anything and without establishing the escrow required by the Court for the benefit of me and my sister.

16. I do not seek to recover for my contribution to an equity pool relied upon by any creditors of NYNM in deciding whether to extend credit to NYNM. I seek only to recover the money which was stolen from me and my sister. While I took a risk in working for NYNM for a decade, I did not agree to take any risk in connection with the sale. I only agreed to the sale because of a stipulation and Orders requiring a specific amount of the sales proceeds to be set aside for me.

17. As it conceded in its bankruptcy filing, NYNM had no significant creditors and was always solvent and profitable. I do not even understand how NYNM was allowed to file for bankruptcy, as it was an extremely profitable company with almost no debt. However, my impression is that NYNM has attempted to use this Court to assist in defrauding me and my sister. NYNM attempted to play similar games in the state court lawsuit to avoid honoring the escrow agreement, and was ultimately held in contempt based on its pattern of indefensible behavior.

18. I had no role in the bargain of the sale of NYNM, and never agreed to accept equity in lieu of cash after the sale of the company. The only agreement I made was to allow the sale to proceed provided 5% of the net proceeds were held in escrow for me.

19. Even if the Court were to determine that my claims should be subordinated to other creditors of NYNM, this should only include NYNM's creditors at the time of the sale, which amounted to a tiny fraction of the sale proceeds.

20. There is no reason that NYNM's purchaser or its creditors should have any claims superior to me or Edel. The purchaser was aware that Edel and I had a pending lawsuit for our percentage of the sale price and unpaid distributions. Bank of America, N.A. was aware of this also, as it was referenced in the sale agreement. Since Constellation and Bank of America, N.A. failed to comply with the escrow requirements ordered by the Court in connection with the sale, they should not be awarded for this theft, ineptitude, and perfidy. They knew that they were purchasing an interest in NYNM subject to the claims of Edel and me, and they cannot wipe out our interests simply by refusing to comply with court-ordered requirement that they hold a portion of the sale proceeds in escrow for Edel and me.

21. As it pertains to Edel's 5% share of the sales proceeds, at the time of the sale, we had a motion pending to increase the 5% which was originally to be held in escrow for me to 10% to make similar provisions for her also. NYNM, Constellation, and Bank of America, N.A. were all on notice of this at the time the sale proceeded. They chose to proceed with the sale while that motion was pending in an attempt to avoid having to comply with the resulting Order. They did not disclose to the Court that they were proceeding with the sale and failing to set aside escrow funds for Edel. As a result, the Court held that this too was contempt and that NYNM was required to set aside a total of 10% of the net sales proceeds. Instead of complying with that Order, NYNM filed for bankrupty.

22. As a result, I request the Court dismiss the adversary complaint and grant my cross-motion for summary judgment.

                                                                                   _____
                                                                                        Kevin Kelly